Good morning, Your Honors. My name is Tony Boscovich. I represent Micaela Zamora as a Yes, thank you for the correction. I'm not going to rehash our briefs or arguments, Your Honor. I think the issues are very well laid out in the briefs. I would state that the case of Hunter v. County of Sacramento is on all fours and is a roadmap for what needs to be done in this case. Your Honors, I think we all know that civil rights law is extremely complicated. I've been doing it since 1992, and my mantra is, the more I do, the more confused I get. The facts of these types of cases are as earthy, human, and they're as basic as they can get. The law, on the other hand, is nuanced, it's subtle, and it's very complicated. Jurors are uniquely well-suited to determine facts in these cases, but they are equally ill-suited to interpret the law. And the jury instructions in these cases are critical, maybe more critical than any other type of case. Now, as lawyers and judges, we have libraries of cases and treatises where we can look at and determine what's what. The juror's lexicon is the set of instructions given to them by the trial judge. Now, the trend today seems to be that we use model jury instructions. If you review the record, that's exactly what Magistrate Judge Graywell said I'm going to use. You have to start with the model instructions. You're talking about 922, for example? 922. If I remember the record correctly, I thought it was proposed by both parties. Your Honor, it's just like Hunter. When the – when your trial judge says you're going to use the model instructions, you start with the model instructions, and then you do what I did and say, we agreed that 922 could be the framework. But what the jurors needed to be told, a few facts, which were not that – which were not readily recognizable, they needed to know that handcuffing is force, not excessive force, that it is force. And that concept is not necessarily intuitive. It's counterintuitive. And if you look, and I'm glad that Judge Trott, that you're here on this panel, because if you read your – your dissenting and concurring opinion in Lalonde, you didn't feel that handcuffing rose to that level. A reasonable person could say handcuffing doesn't really get to the level of a constitutional violation, but it does. The jurors needed to be told that the issue of whether handcuffing was force, just force on its own, that was off the table for discussion. They could discuss whether the handcuffing was unreasonable, excessive. Additionally, they needed to be told that extremely counterintuitive, that failing to release handcuffs or loosen tightened cuffs also can be excessive force. That is in nobody's, in my opinion, personal lexicon, that that could be force. I will tell you that if I were not a lawyer and I were sitting and talking on the street, I – if somebody came up to me and said, would you think that failing to loosen tight handcuffs is – is force, an excessive force, I very well might say no. But that's not the law. The law is that it is. Now, the model instructions in a civil rights case, 922, is bare bones, and then it says fill in the blank. If you speak to jurors, and none of us will – I mean, I never have, and I've met very few lawyers that ever sit on a jury, but when you talk to them, universally, what they will say is, is that they were confused by the instructions. And I think you can understand why in this  Sotomayor, I think we have to review this for abuse of discretion. I would disagree. I would disagree. Okay. And the reason is, is that according to Hunter, and that would be at page 1232, is it an error in formulation, which is abuse of discretion, or is it a misstatement of the law? An incomplete instruction in Hunter is an error – is considered to be a misstatement of the law. And I guess let's – I mean, just for sake of argument, we disagree on that, and that the standard Ninth Circuit instruction that was given here was a complete misstatement of the relevant law, then we would say abuse of discretion, correct? Well, if you see – And if we're looking at it with respect to abuse of discretion, what's your best argument that this was error? The reason was, is that because it was so obvious that the idea of pointing a weapon with no discharge, that it is so obvious that the handcuffing issues are not our counterintuitive, as I argued, that the judge did abuse his discretion by not allowing it. The – the issue becomes what – we have a four-day jury trial. To tell the jury that handcuffing is force, that pointing a gun without discharge is force, would have taken two minutes. Two minutes. And as it stood, given the basis of the law, seeing Judge Trott's dissenting – or concurring and dissenting opinion in Lalonde, it was obvious on its face that this was not an easy issue. Instead – So tell me how it was argued to the jury. I don't have the excerpts here. But how – how did – how was that issue argued? Oh, I – I argued that issue. What I did was I told them that the instruction told them in an obtuse way that it was force. I said that it was force. But the – So you may have a confused jury if they were just to get the case with that argument. But they had the benefit of your interpretation and your argument that this was excessive force. So – But the number one instruction is what I say isn't the law. What I say isn't evidence. Well, the jury – The law comes from the judge. Well, sure. But, I mean, in terms of how a jury would understand a particular instruction or the way the law unfolds in a case can be informed by what you say in closing argument. Of course it can. And – and although I don't have your closing argument at hand, I mean, my impression was when I – that – that that was the very issue you argued, because that was the case. I did what I could. And we're – we're constantly worried about instructions that preclude you from arguing something. I – Did not preclude you from arguing your case. He did not. But – but – but the difficulty is, is that we're sitting at a three-judge panel. There can be a dissent, and we still get a decision. A jury has to be unanimous. If one jury – juror does not buy my argument that the law is – and remember, the testimony that they were told to listen to, that I could not refute, was that the officer said that handcuffing is – where they were trained that handcuffing is not force. There was no curative instruction on that, because that was a misstatement of law. By the – by the witness. By a witness. Now, was the jury also told in order to prove a seizure in this case, the plaintiff must prove by a preponderance of the evidence that the officers used excessive force when employing drawn weapons or handcuffs? I mean, doesn't that militate in your favor? You know, the question becomes is, of course, they're – they're told that. And that's what I meant by an obtuse way. But it was left to me to tell the jury what this Court has said in Robinson v. County of Solano, and it was left to me by what this Court said in Lalonde v. Riverside what the law was. And that was up to Judge Grewal. And because it is so counterintuitive, that we can't say – that we can't say that those jurors didn't go back there and say, you know what, handcuffing happens every day. Of course handcuffs are always uncomfortable. You know, what's the big deal? You know, it's interesting. As I listen to you talk, I'm reminded of my wife's uncle. Sometimes in trying to explain what terms mean, we make them harder to understand. He was a judge in Long Beach, and his general instructions – for example, he had a case of theft. And he just told the jury, ladies and gentlemen, that defendant over there is charged with stealing a bike. Now, if I have to tell you what stealing means, we're all in trouble. Go out and decide the case. Your Honor? And then when you start trying to decide stealing, you get into a five-part test. That's when you start getting tangled up in your own feet. Understood. But that's not this case. I know. Because we all do know what stealing is, but we all don't know what – We do. The jury instructions don't. Well, I hear you on that. But the question is, is do we know what force means? Until 2002, we didn't know that handcuffing was force. Until 2002, we didn't – until the Fifth Circuit was force. There was all kinds of debate about show of force versus force. The Fifth Circuit talks about show of force, and I think still does. But that's not the law in the Ninth Circuit. We have to tell the jurors things that are counterintuitive. Chief Justice Roberts said that when he writes his opinions, he goes where the law takes him. He can do that because he knows the law. But if you don't tell the jury the law, if you don't give them the lexicon, they can go anywhere. And so the model instruction, which seems to be, well, we don't want to give them too much information because that overly focuses, well, that's really a red herring. It didn't – it wouldn't overly focus a juror. It tells it. We knew what the issues were. And it's interesting. The appellees never disputed the law. If you'll notice in their briefs and their arguments, they never dispute that handcuff in their written work, that handcuffing is force, pointing a gun is force. They don't dispute that because that's clearly the law. But they did dispute telling the jury that directly. Why? Because they know, as we do, that if you tell the jury that, you'll go back there and say nobody's going to be talking about, oh, handcuffing is no big deal, happens to everybody, it's uncomfortable or whatever. It's force. Now let's talk about whether failing to double-lock that – those cuffs was reasonable or unreasonable. Let's talk about whether failing to loosen them after she complained of pain and was sat there for ten minutes, you know, in pain, whether that was unreasonable. We don't even know if they got there. Now, if you take a look at what happens, the other thing that I have to show is prejudice. And I would invite the Court to look at the subsequent history of the Hunter v. County Sacramento case. After the Court reversed and said, you know, in Hunter, they said, you need to give some examples. You need to tell them because this bare-bones instruction isn't enough. It went back to jury trial. There was a plaintiff's verdict in that case. The change in instructions made a difference. And I would ask the Court, if the jury had been told that pointing a gun at a restrained subject, you know, is force, if it isn't likely that a jury, if they credited the testimony that there was a gun held to her head execution-style, that that was – can you say that with any degree of certainty that a jury wouldn't have found that to be excessive force? Well, I have a note here that you actually told the jurors, and I quote, the judge is going to tell you that using handcuffs is force. But he didn't. I may have said  I didn't know what the instructions were when you said that. Actually, Your Honor, what I said was the witnesses would tell us, would say that using handcuffs is force. I said that in opening statement. And that didn't happen. I got blindsided because I knew that all the training I'd ever seen was that it was force. And then two witnesses came up and said, no, it's not. So it was different. You've got a minute 40 left. Do you want to reserve? I think I will reserve. Thank you. Good morning, Your Honors. My name is John Heberlin, and I represent the appellees who are the individual police officers in the City of Santa Clara. Your Honors, the delicate task of tailoring jury instructions should be left to the sound discretion of the District Attorney, with reasonable discretion, whether or not to grant or deny special instructions or curative instructions. We all would like to have our special instructions given. It is easy for any party to search the pool of applicable law and find a case snippet or a legal principle that helps support their version of the case. But at some point in every case, a judge has to do what the trial judge did in this case and act as a referee and make reasonable determinations of which jury instructions should be issued and which should be declined. So presumably, the government made the same argument in Hunter. How do you distinguish Hunter? Your Honor, thank you for raising that issue, because the gate issue in this case is, of course, de novo review versus abuse of discretion review. If you look at Hunter, Dang v. Cross, the cases that triggered de novo review, those all involved a situation where the law was incomplete and therefore gave rise to a misstatement of law. We review misstatements of law de novo. We review formulation or wording issues with the instructions by abuse of discretion. So when you look at Hunter, the lawyer in that case was precluded from establishing a Monell custom policy or practice claim because there was nothing that informed the jury that such a claim could be inferred by a public entity not taking steps to remedy repeated instances of civil rights violations or not disciplining the involved officers. The lawyer in that case didn't have the ammunition to make that claim. Just like in Dang v. Cross, the lawyer in that case was precluded from arguing oppressive conduct as a basis for punitive damages. He simply couldn't do it. This case is much different. They're not claiming that there was some error in the law as it was transposed into a jury instruction. They're not claiming that there was some hole in the law, some theory of liability that wasn't covered. What they're suggesting is that the jury instructions as they sat were confusing, and that terms needed to be further defined or further refined. Was it the law at the time of this trial that the simple use of handcuffs is force? The law at the time of this law, Your Honor, is that in certain circumstances, handcuffing alone can constitute excessive force. I don't know that there's a particular authority that says when using employing handcuffs constitutes per se, ipso facto, is force. Handcuffs legally amounts to force. If they rise above a certain threshold. But there's the question of course, is it excessive force? Is it a whole different issue? But it's using force against someone. Well, we get into the legal distinction of what the law says about that versus what a police manual may say about something like reportable use of force. But I'm concerned about the time of the trial. Was there a law that said the simple use of handcuffs, putting handcuffs on somebody, is force. Then, of course, you have to ask whether it's excessive, but is it force? I don't know that there was a law that specifically said that. Same thing about pointing a gun at somebody. Is that as a matter of law, the use of force? Again, I don't know that there's a law that establishes the exact threshold of when that action becomes force. I do know it's a factual question for the jury as to when those items amount to excessive force. And again, the this was all clearly spelled out for the jury in jury instruction number 17. They were specifically told that they were to evaluate these officers' conduct in the context of, quote, employing drawn weapons or handcuffs. They were also told, quote, in determining whether the officers used excessive force in this case. And then they were given six factors upon which to evaluate the excessive force. These jurors were specifically directed that they were to evaluate the circumstances that occurred in this case and whether those rose to the level of excessive force. And you can't just take this instruction in a vacuum. Great latitude was given to Appellant to present her claim in this case. Her attorney was actually allowed to be handcuffed by one of my officers in front of the jury. Her attorney was permitted to evoke images of people being shot execution-style and the iconic Vietnam-era photograph of a young boy with a gun to his head. So jurors confronted with all of this and armed with jury instruction 17 are not going to be oblivious to the fact that handcuffing in certain circumstances can constitute excessive force and drawn weapons in certain circumstances can constitute excessive force.  The issue of this additional instruction, and if you think about it, everyone can say that their jury instructions were incomplete. By definition, when you're asking for another instruction, you're asking for something new, and you can always say it needs to render the existing set incomplete. So you can so what the judge is weighing is whether or not you need a specific, further refining instruction, but there's a countervailing interest, and that is, do you risk emphasizing one party's version of the law or one party's view of the case? I could have easily said, well, I would like an instruction that says that use of handcuffs doesn't have to be excessive force, or police officers can use drawn weapons and it doesn't have to be excessive force. We can do that. Roberts, Instruction 922 was altered at the request of the defendant to add when employing drawn weapons or handcuffs. Correct. That was part of the joint instruction here. So getting back to the initial question of the standard, I just want to say that these proposed instructions, were they inaccurate statements of the law? I mean, the one that's proposed, the first one read in part, handcuffing one too tightly may constitute excessive force. Is that an inaccurate or incomplete statement of the law? It is not an incorrect statement of the law. It's an argumentative statement of the law that stresses their particular view of the case. And that's upon the basis I objected upon. So it's a correct statement of the law, and your argument, just so I can understand your position, is that it unfairly emphasizes their case? Yes. Their theory? Yes. But they get to argue their theory of the case. The law entitles them to that. And they had every right to do it. I think counsel said very clearly to the jury, this is excerpts of record, docket number 1, pages 918 to 19. Unreasonably using handcuffs is also constitutional force and excessive force. Pointing a gun can be excessive force. He wasn't hamstrung in any way by anything that transpired during the trial to show his view of the facts that this conduct gave rise to excessive force. And, Your Honors, I want to step back and emphasize that the law may be unfair. I mean, certainly the law cuts one way or the other, but what's that, the basis of objection? I don't understand the basis of that objection. Your Honor, every we're for purposes of argument, we have to assume that every proposed special jury instruction is a correct statement of the law. If it's not a correct statement of the law, it wouldn't be valid. So if we get beyond that and assume that it's a correct statement of the law, the issue becomes whether to give it. And just because it's a valid statement of the law doesn't mean it's issue. We can all be fair. No, I agree with that. I'm just curious as to your objection that you say a correct statement of the law is unfair to one party or another. My objection is that it's not. And again, just that it's cumulative, but I don't understand unfair. Because it emphasizes and it has the potential to emphasize their version of events, which is that handcuffing can and it creates the risk of juries concluding that it necessarily must constitute excessive force. But that's not what the jury instruction said. It said handcuffing one too tightly may constitute excessive force, which I think is incontrovertible. And that pointing a firearm may constitute excessive force, even if there's no physical injury. Those are both correct, right? Correct, Your Honor. My position in the court below, which is the same here today, is we had a comprehensive three-, four-paragraph instruction that incorporated six different factors for the jurors to determine whether the officers used excessive force in this case. And my concern is when you go back and remind them that handcuffing can constitute excessive force, drawn weapons can, after you've already told them that they're to evaluate those issues in the context of drawn weapons and handcuffs, you risk – and this is exactly what His Honor said in the court below – all they do is they risk stressing their theory of the case. You know, again, we'd all like to have, you know, a dozen special instructions refining and highlighting and making sure that the jurors understand every variable that comes out in a trial. But then we'd have, you know, hundreds of pages of jury instructions. And the standard for this Court is not – what you're here to decide is not whether the jury instruction was written in such a way that it could account for any conceivable variable in the evidence or the law. The standard that you are here to weigh is from Dang v. Cross. Jury instructions must fairly and adequately cover the issues presented, must correctly state the law, and must not be misleading. That's – that's it. And so when you look and consider jury instruction number 17, you have to conclude that these fairly and adequately stated the law. You can always say an additional instruction would have made things more concrete, would have cleared up any confusion. But again, if we're going to say that this triggers de novo review and something that triggers reversal, then I have a hard time believing that Your Honors are going to see an abuse of discretion case in the future on a jury instruction. Well, the parade of horribles argument probably isn't going to work. I mean, we've all seen a multitude of jury instructions, so I doubt that this would open the floodgates. So the question is whether or not they are fairly entitled to present their theory or not. Fair enough, Your Honor. And I want to underscore one very important point, because we had something in this record that we didn't have, that they didn't have in Hunter, and that are not present in any of the de novo cases from this Court where prejudice was found. And that is that we have a separate finding of no negligence. We know that this jury would have come to the same result had they been given the jury instruction proposed by counsel. If the jury's feeling in this case was that we think the officers were unreasonable, we don't think they should have used handcuffs, we don't think they should have used drawn weapons, but we're really confused about the successive force thing, they would have told us in the negligence verdict. There's nowhere in the negligence jury instructions that uses the term force. And so even if the Court considers any issues of jurisdictional error, you have to find that this was harmless error. So you were the trial attorney as well. Yes, I was. Yes. So I don't have it at hand. I will read it. Tell me about your closing argument. How did you argue excessive force? I argued that in the context of an unfolding bank robbery, when officers had not been able to get inside the bank, and they'd heard that a person in this particular parking stall was housing an armed man in the rear seat, that everything these officers did was absolutely reasonable, and the jury agreed. And the jury could have, again, told us, you know, we've heard all of this talk about handcuffing and cinching down and guns pointed at head, but you have to remember, all of that was disputed. And the only evidence that there were guns pointed at people's head came from Ms. Nava and her family. The jury heard it all. They resoundingly rejected every claim against every single officer. And it is our submission that this case should be affirmed. Any further questions? Okay. Thanks for your argument. Thank you. Thank you, Your Honor. Maybe you could address the last point, that there was a negligence point, and then notwithstanding what everything that you've said, there's no prejudice. Your Honor, no, because, again, it's the reasonableness standard. All right? They could say that, well, this is enforced. Just as an example, handcuffing is no big deal, right? So there's no negligence. We did everything according to our training. So there's no problem. You can't say that. They needed to know that, potentially, that handcuffing or doing things with handcuffs from the court had to be, could potentially be something wrong, that pointing a gun with no discharge could be something wrong, all right? They weren't told that. So the prejudice comes, just like it did in Hunter, where they weren't told certain examples of what could be wrong. I was in the same position that Mr. Hunter was in. I didn't have the benefit of the examples. If I had had the benefit of the examples that would have come from the judge, I could have made my argument, and I may have won, as Mr. Hunter has done afterwards. I wanted to answer your question, Judge Trot, about is there any case that says that force, that handcuffs is force. It's absolutely yes. It's Euclidean. If use of handcuffs in some circumstances can be excessive force, by definition, the use of handcuffs has to be force. It has to be. As I said, you know, not precluding from argument, Mr. Hunter wasn't precluded from arguing anything. He just didn't have the jury told what the problems could be. And I want to make clear, my arguments are not a statement of the law. Jurors go back. They're dealing with a difficult situation, rapidly evolving circumstances. They're listening to police officers, you know, in this situation. The question is, what is the law? And, Judge Thomas, you hit the nail on the head. They have to be told what the law is. And if they're not told what the law is, the jury goes back, and we have no clue how they come to it. If they're told what the law is, we're talking to you, we've talked two sentences, 30 seconds, and they would have known. I come back, I lose after my argument, there's no appeal. But because they weren't, it's tainted. Thank you, counsel. Thank you, Your Honor. Thank you both for your arguments this morning. The case is here to be submitted for decision.
judges: Trott, Thomas, Murguia